# FRIER LEVITT
ATTORNEYS AT LAW

Jonathan E. Levitt, Esq. (JL 3881)
William Lim, Esq. (WL 5706)
84 Bloomfield Avenue
Pine Brook, NJ 07058
Telephone: (973) 618-1660
Facsimile:    (973) 618-0650
jlevitt@frierlevitt.com
wlim@frierlevitt.com
Attorneys for Plaintiff-Petitioner, Mohamed M. Kawam, M.D.

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MOHAMED M. KAWAM, M.D., | Civil Action No. 14-CV-06330 (WJM)(MF) |
| Plaintiff-Petitioner, | |
| vs. | Hon. William J. Martini, U.S.D.J. |
| | Hon. Mark Falk, U.S.M.J. |
| UNITED STATES OF AMERICA, THOMAS M. HARRIGAN, in his official capacity as Deputy Administrator of the Drug Enforcement Administration, ADRIANA DIMICELI, Special Agent – Drug Enforcement Administration, in her individual capacity, THOMAS POPOWICH, Diversion Investigator – Drug Enforcement Administration, in his individual capacity, THOMAS GERMANY, Special Agent – Drug Enforcement Administration, in his individual capacity, JOHN DOES 1 – 20, law enforcement officers, in their individual capacities, | (DEA Asset ID No. 14-DEA-602837, Case No. C3-13-0140) |
| | (On Appeal From DEA Administrative Docket No. 2014-23) |
| | ORAL ARGUMENT REQUESTED |
| Defendants-Respondents. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR HARDSHIP RELEASE OF SEIZED CURRENCY**

On the Brief:   Jonathan E. Levitt, Esq.
                William Lim, Esq.

i

# TABLE OF CONTENTS

PAGE

**TABLE OF AUTHORITIES**.................................................................................................. **iii**

**PRELIMINARY STATEMENT** ...............................................................................................1

**STATEMENT OF FACTS** ........................................................................................................1

**LEGAL STANDARD** ................................................................................................................2

**LEGAL ARGUMENTS**.............................................................................................................3

    **POINT I**
    **PLAINTIFF HAS DEMONSTRATED SUBSTANTIAL HARDSHIP TO JUSTIFY**
    **IMMEDIATE RELEASE OF CURRENCY**……………………………………………...3

    **POINT II**
    **THE CURRENCY SEIZED BY THE D.E.A. IS ELIGIBLE FOR A HARDSHIP**
    **RELEASE BECAUSE THE ENTIRETY OF PLAINTIFF'S LEGITIMATE**
    **BUSINESS HAS BEEN SEIZED**……………………………………………………….4

**CONCLUSION**..........................................................................................................................8

# TABLE OF AUTHORITIES

CASES

*In re Seizure of Any and All Funds on Deposit in Wells Fargo Bank, N.A. Account Number 2000046266466*,
2014 WL 2611253..................................................................................................................6

*In re Seizure Warrants Issued March 27, 2008 and April 23, 2008*,
593 F. Supp.2d 892 (N.D.W.Va.2008).............................................................................4, 5, 6, 7

*In re Surendra Sheth, M.D.*,
2009 WL 1425163 (N.J. Ofc. Of Admin. Law 2009)....................................................................7

*U.S. v. 8 Gilcrease Lane*,
587 F. Supp.2d 133 (D.D.C. 2008)..............................................................................................4

*U.S. v. All Assets of Statewide Auto Parts, Inc.*,
971 F.2d 896 (2d Cir. 1992)...........................................................................................5, 6, 7, 8

*U.S. v. Various Gold, Silver and Coins*,
916 F. Supp.2d 1182 (D.Or. 2013)........................................................................................4, 6, 8

*U.S. v. Victoria-21*,
3 F.3d 571 (2d.Cir. 1993).........................................................................................................5, 7

STATUTES

18 U.S.C §983.................................................................................................................*passim*

21 U.S.C. §876..........................................................................................................................8

Civil Asset Forfeiture Reform Act, P.L. 106-185, 114 Stat. (2000)............................................5

N.J.S.A. 45:1-21… ....................................................................................................................7

REGULATIONS

21 C.F.R. §1316.03 ...................................................................................................................7

21 C.F.R. §880 ..........................................................................................................................7

N.J.A.C. 13:35-6.5.....................................................................................................................7

**PRELIMINARY STATEMENT**

Plaintiff-Petitioner, Mohamed M. Kawam, M.D., hereby appeals the October 24, 2014 final decision of the Drug Enforcement Administration ("DEA"), denying the immediate release of U.S. currency seized from Plaintiff on the basis of hardship. On August 13, 2014, incident to a warrantless and illegal search of Plaintiff's home, the DEA seized the sum of $52,874.00 in U.S. currency from Plaintiff's household. The DEA initiated asset forfeiture proceedings against this property by way of a Notice of Seizure dated September 9, 2014, Asset ID No. 14-DEA-602837, Case No. C3-13-0140. Plaintiff timely filed suit in this Court, by way of his October 13, 2014 Verified Complaint, to contest the forfeiture, and sought the immediate release of this U.S. currency on the basis of hardship pursuant to 18 U.S.C. § 983(f)(1).

By way of letter dated October 24, 2014 from the DEA's Office of Chief Counsel, Asset Forfeiture Section (the "Hardship Letter"), the DEA denied Plaintiff's request for a hardship release and noted in the same letter that "[t]his decision is final." By way of a further letter dated October 28, 2014, the DEA noted that it has "accepted" Plaintiff's claim as to the underlying merits of the seizure and forfeiture action, and referred the matter to the U.S. Attorney's Office for the District of New Jersey. Thus, the DEA has not yet issued an administrative decision as to Plaintiff's underlying dispute regarding the merits of the DEA's seizure. This appeal therefore is limited to the issue of the DEA's erroneous denial of a hardship release. Plaintiff expressly reserves all rights to seek judicial review of the DEA's eventual decision on the underlying merits.

**STATEMENT OF FACTS**

Plaintiff reiterates and incorporates herein by reference all facts alleged in his Verified Complaint. Plaintiff further reiterates and incorporates herein by reference his Declaration of Mohamed M. Kawam, M.D. ("Kawam Hardship Decl."), and the exhibits thereto, filed together

1

with this brief in support of a hardship release. Significantly, Plaintiff draws the Court's attention to the material facts relevant to the factors determining a hardship release of seized currency.

It is undisputed that the subject currency was seized from Plaintiff's home. In fact, as set forth in Plaintiff's Declaration, the DEA specifically asked Plaintiff if he had cash located in the home. Crucially, however, the DEA did not have a warrant to search Plaintiff's home, and Plaintiff did not consent to the search. Once seized, the DEA agents neither counted the currency nor recorded the bill serial numbers at the time of seizure. Moreover, the DEA agents ignored Plaintiff's explanations for the source of the cash and what it was used for. Had the DEA agents made a proper inquiry, they would have discovered that Plaintiff and his family saved this cash for many years, and rely upon it for everyday household expenses as well as business expenses.

After seizing the currency from Plaintiff's home, the DEA further seized the entirety of Plaintiff's business by seizing virtually all of Plaintiff's *original* patient files and business records from Plaintiff's office. Plaintiff's medical practice cannot operate in the long term without the return of his patient files or business records. Although Plaintiff's medical practice is currently open, Plaintiff cannot serve the majority of his patients and is, in fact, incurring monthly losses between $15,000 and $20,000. Furthermore, because Plaintiff no longer has his *original* patient files and business records, he is unable to respond to requests for medical or business records pursuant to physician/patient file requests, insurance audits, attorney requests, or state/federal regulations. Notably, because Plaintiff no longer has his *original* patient files, he is unable to maintain medical records in compliance with New Jersey State Board of Medical Examiners regulations.

## **LEGAL STANDARD**

Pursuant to the civil forfeiture statute, 18 U.S.C. § 983(f)(1), a claimant to seized property is entitled to immediate release of that property if: (A) the claimant has a possessory interest in the property; (B) the claimant has sufficient ties to the community to provide assurance that the

2

property will be available at the time of the trial; (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless; (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and (E) none of the conditions set forth in 18 U.S.C. § 983(f)(8) applies.

Pursuant to 18 U.S.C. § 983(f)(8), seized property is not eligible for a hardship release if it: (A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized; (B) is to be used as evidence of a violation of the law; (C) by reason of design or other characteristic, is particularly suited for use in illegal activities; or (D) is likely to be used to commit additional criminal acts if returned to the claimant.

## LEGAL ARGUMENTS

### POINT I
### PLAINTIFF HAS DEMONSTRATED SUBSTANTIAL HARDSHIP TO JUSTIFY IMMEDIATE RELEASE OF CURRENCY

Pursuant to 18 U.S.C. § 983(f)(1)(C), currency seized by the Government may be released to a claimant pending final disposition of the forfeiture proceeding if continued custody of the monies by the Government "will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless."  As set forth in Plaintiff's Declaration, there are more than enough facts to demonstrate that Plaintiff has suffered, and will continue to suffer a "substantial hardship" by being denied access to the monies seized by the DEA. See Kawam Hardship Decl.  Specifically, Plaintiff has attested to the fact that the currency seized by the DEA had been used for both everyday household expenses

3

and business expenses. Id. at ¶¶16-18.  In particular, it is used to buy groceries, provide room and board for Plaintiff's children enrolled in medical school, and for emergencies. Id. at ¶17.  It is also used as a cash reserve for Plaintiff's medical practice. Id. at ¶18.  Without the ability to draw upon these monies, Plaintiff has been forced to incur debt in the form of a bank line of credit. Id. at ¶25. If Plaintiff is forced to continue to rely on debt without being able to use the seized monies, he is at risk of foreclosure or bankruptcy. Id. at ¶26.  Moreover, without the ability to draw upon the seized monies, Plaintiff's medical practice is suffering losses of $15,000 to $20,000 per month. Id. at ¶40. Taken together, these facts show that Plaintiff is under substantial hardship due to the DEA's seizure of his hard-earned and hard-saved monies.

**POINT II**
**THE CURRENCY SEIZED BY THE D.E.A. IS ELIGIBLE FOR A HARDSHIP RELEASE BECAUSE THE ENTIRETY OF PLAINTIFF'S LEGITIMATE BUSINESS HAS BEEN SEIZED**

According to the Hardship Letter, the sole basis upon which the DEA denied Plaintiff a hardship release is 18 U.S.C. § 983(f)(8)(A).  In interpreting 18 U.S.C. § 983(f)(8)(A), federal courts have construed the clause "legitimate business which has been seized" to mean that the Government must have seized an entire business, and not merely portions of the assets thereof. See, e.g., In re Seizure Warrants Issued March 27, 2008, and April 23, 2008, 593 F. Supp.2d 892, 893 (N.D.W.Va. 2008); U.S. v. 8 Gilcrease Lane, 587 F. Supp.2d 133, 140-41 (D.D.C. 2008); U.S. v. Various Gold, Silver and Coins, 916 F. Supp.2d 1182, 1187 (D.Or. 2013).  Notably, the DEA emphasized that Plaintiff has not shown that "the seized currency is an asset of a legitimate business which has been seized."  Although the Hardship Letter cites to 8 Gilcrease Lane, where there was a factual question as to the legitimacy of the business that was seized, 587 F. Supp.2d at 141-46, the DEA has not asserted, much less provided any evidence, that Plaintiff's medical practice is not a legitimate

4

business. Thus, the salient issue for judicial review is whether Plaintiff's business has in fact been seized in its entirety.

In determining whether a forfeiture claimant's business has been seized in its entirety, federal courts conduct a fact-sensitive analysis that essentially looks to the degree to which a business remains viable following seizure, as well as the actions taken by the Government in effectuating the seizure. See U.S. v. All Assets of Statewide Auto Parts, Inc., 971 F.2d 896, 901 (2d Cir. 1992). Thus, where a business continued to operate and generated a profit, it cannot be found to have been seized. In re Seizure Warrants, 593 F. Supp.2d at 894. Likewise, where a business fails to show that it has no means of "curing the mortal wound" inflicted by the Government, courts will not find that the entire business has been seized. U.S. v. Victoria-21, 3 F.3d 571, 574-75 (2d. Cir. 1993) (limiting the applicability of Statewide). Therefore, absent other compelling facts, a business that has had certain assets seized, but nevertheless continues to operate even at diminished capacity, will not be found to have been entirely seized. Victoria-21, 3 F.3d at 574-75.

On the other hand, where a seizure has resulted in a business being virtually shut down, regardless of whether a claimant has been judicially enjoined from operating the business or not, courts will find a valid basis to immediately review an appeal of the seizure. Statewide, 971 F.2d at 901. This is especially true when the Government has chosen the most draconian and intrusive means of effectuating the seizure, where other less disruptive measures were available. Id. Notably, although Statewide was decided prior to the enactment of 18 U.S.C. § 983 in its current form pursuant to the Civil Asset Forfeiture Reform Act ("CAFRA"), P.L.106-185, 114 Stat. 202 (2000), the Second Circuit expressed enormous concern at the Government's "increasing and virtually unchecked use of the civil forfeiture statutes," and strongly advised that federal courts "should be vigilant in approving seizures *ex parte* only upon a showing of the most extraordinary or exigent circumstances, and whenever possible should favor less drastic measures […] for preserving the

5

*status quo ante* seizure until the criminality underlying the claimed forfeiture can be established in the context of a proper criminal proceeding with its attendant constitutional protections to the accused." Statewide, 971 F.2d at 905.

The cautionary approach in Statewide has been considered in the context of an application for hardship release of seized currency under 18 U.S.C. § 983(f). See In re Seizure of Any and All Funds on Deposit in Wells Fargo Bank, N.A. Account Number 2000046266466, 2014 WL 2611253, at *10-*11 (E.D.N.Y. 2014).  Furthermore, in the context of hardship release applications, courts have also addressed the concept of "constructive seizure," where although a business has not been totally seized to the extent found in Statewide, the Government's seizure has nevertheless so severely stripped or hamstrung a business as to leave behind an empty shell that is unable to operate. See In re Seizure Warrants, 593 F. Supp.2d at 894; Various Gold, 916 F. Supp.2d at 1187.  Even if the "constructive seizure" concept poses a difficult factual burden for Plaintiff to prove, the Court must nevertheless consider the question of just how much of a business must be seized, in light of the analysis undertaken in Statewide, before a business is adjudged to have been effectively seized in its entirety.  Critically, a "constructive seizure" analysis serves as a crucial judicial check on the Government's otherwise unfettered ability to claim – against all logic and sense of fairness – that a business stripped of the property it needs to operate has not been seized so long as a shell corporation is left behind on paper. See Statewide, 971 F.2d at 905 (calling upon courts to be "vigilant" against Government abuse of forfeiture statutes).

In the case at bar, it is beyond reasonable dispute that the DEA has seized the entirety of Plaintiff's business.  Here, it is highly significant that the DEA not only seized currency from Plaintiff (importantly, when they did not have a warrant to do so), but also seized the major bulk of Plaintiff's *original* patient files and business records.  Furthermore, to date, the DEA has ignored Plaintiff's repeated requests for the return of these *original* documents.  The DEA's actions in this

6

regard clearly exceeded the authority granted under the Controlled Substances Act ("CSA") and its implementing regulations. Notably, in granting the DEA powers to perform searches and inspections of premises such as medical offices, the CSA only speaks of "inspecting, copying, and verifying" records, and does not authorize their outright seizure. 21 U.S.C. § 880(b)(1). Similarly, regulations under the CSA also only call for "[i]nspecting, copying, and verifying" and "[c]hecking of records," not outright seizure. 21 C.F.R. § 1316.03(a) and (e).

The CSA specifically provides for inspecting and copying of records because, unlike inventory, physical equipment, or even currency, records such as patient files are irreplaceable and not fungible. Plaintiff cannot simply re-create from memory nearly a decade's worth of treatment records for over a thousand patients. Moreover, Plaintiff is contractually and legally obligated to maintain these documents and, in certain circumstances, be able to produce them upon demand. N.J.A.C. 13:35-6.5. Failure to comply with medical record-keeping requirements places Plaintiff at extreme risk of suspension or revocation of his medical license. N.J.S.A. 45:1-21(h); see also, e.g., In re Surendra Sheth, M.D., 2009 WL 1425163 (N.J. Ofc. of Admin. Law 2009) (suspension of medical license due in part to record-keeping failure). Thus, even if Plaintiff's medical office technically remains open, it is virtually impossible for him to render proper treatment to patients whose files he no longer possesses.

The specific facts of the instant case therefore distinguish Plaintiff from other cases where a hardship release of seized currency was denied because a business had not been entirely seized. It is obvious that if Plaintiff cannot treat his patients because he lacks their medical records, Plaintiff's medical practice has and will continue to suffer a diminution in revenue and goodwill. See Statewide, 971 F.2d at 901 (recognizing business goodwill as an asset lost due to seizure of business). This is in contrast to In re Seizure Warrants, 593 F. Supp.2d at 894, where the subject business managed to still generate a profit. Furthermore, whereas in Victoria-21, a transportation company was left with

7

"some trucks" still available to continue operations, 3 F.3d at 574-75, here Plaintiff has been left with nothing with which he can rebuild or continue his practice.  Indeed, while Plaintiff does not dispute the Government's ability to seize "documents to aid its investigations," Various Gold, 916 F. Supp.2d at 1187, it was wholly improper for the DEA to seize *original* documents where the CSA only calls for inspection and copying.

It should also be of no moment whether the DEA asserts that it seized Plaintiff's *original* documents solely for the purpose of copying.  The DEA has had more than three months since its agents seized Plaintiff's records on August 13, 2014 to copy those documents.  Yet, to date, the DEA has failed to respond to Plaintiff's repeated requests for the return of his *original* patient files and business records, and has not given any date certain as to when these documents will be returned.  The DEA's actions here were the most draconian possible, even in excess of its authority under the CSA, without having made any attempt to use less drastic measures.  Indeed, the CSA allows the DEA to obtain documents in furtherance of an investigation by means of subpoena, 21 U.S.C. § 876, which would have allowed Plaintiff the opportunity to undertake the copying of records himself.  As the Second Circuit held in Statewide, when the Government executes a draconian seizure that has the effect of shutting down a business, where less restrictive measures were available, the court should find in favor of the property claimant. 971 F.2d at 901-05.  Thus, whether intentional or not, the DEA's seizure of Plaintiff's *original* records must be equated with the seizure of Plaintiff's entire business.

## **CONCLUSION**

For all of the reasons set forth above, the Court should grant Plaintiff's Motion for a Hardship Release of Seized Currency, and issue an Order directing the DEA to immediately release the amount of $52,874.00 to Plaintiff.  In addition, although the instant motion is primarily directed toward a hardship release of seized currency, Plaintiff also requests that the Court issue an Order

8

directing the DEA to immediately release the patient files, business records, and other documents seized from Plaintiff.

                                      Respectfully submitted,

                                      **FRIER & LEVITT, LLC**

                              By:    s/ William Lim
                                     Jonathan E. Levitt, Esq. (JL 3881)
                                     William Lim, Esq. (WL 5706)
                                     84 Bloomfield Avenue
                                     Pine Brook, NJ 07058
                                     Telephone: (973) 618-1660
                                     Facsimile:   (973) 618-0650
                                     jlevitt@frierlevitt.com
                                     wlim@frierlevitt.com

                                     Attorneys for Plaintiff

Dated: November 21, 2014