UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MOHAMED M. KAWAM, M.D.,

    Plaintiff

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

Civil Action No. 2:14-cv-06330

OPINION

**WILLIAM J. MARTINI, U.S.D.J.:**

Dr. Mohamed M. Kawam has filed the instant action against the United States and a number of federal agents. He alleges that Defendants violated his rights when conducting a raid on his home in August 2014. This matter comes before the Court on Defendants' motion to dismiss and motion for summary judgment. For the reasons stated below, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**, while their motion for summary judgment is **DENIED**.

## I. BACKGROUND

Plaintiff Dr. Mohamed Kawam, M.D. is a solo practitioner physician who specializes in internal medicine. Both his home and place of business are located in New Jersey. This case largely arises out of a Drug Enforcement Agency ("DEA") raid conducted on Dr. Kawam's home and place of business. Unless otherwise noted, Dr. Kawam alleges the following facts in his complaint.

Beginning in February 2014, the DEA began investigating Dr. Kawam with the suspicion that he was unlawfully distributing Oxycodone, Alprazolam, and other controlled substances in violation of the Controlled Substances Act ("CSA"). After investigating Dr. Kawam for a period of six to seven months, on August 12, 2014 the DEA issued an Order to Show Cause and Immediate Suspension of Registration, thereby terminating Dr. Kawam's ability to administer, dispense, and prescribe certain controlled substances. During the same time, Defendant Adriana DiMiceli – who is a Special Agent for the DEA – sought and obtained a search warrant for Dr. Kawam's business office. The next day, Defendants Popowich and Germano (who are also DEA Special Agents) arrived at Dr. Kawam's home and conducted a search that resulted in the seizure of patient files and

United States currency.[1]  Dr. Kawam states that he never voluntarily consented to the search and that the DEA Agents obtained access to his home through coercion.  He claims that the DEA arrived at his home early in the morning in order to catch him at a time when he was "off guard."  Upon the DEA's arrival, "at least ten armed law enforcement officers" roamed his home while "authoritatively shouting" at him and his family.  While the Agents vaguely informed Dr. Kawam that they had a warrant, they did not specify that the warrant was only for his office and not his home.  While at his home, the DEA Agents interrogated Dr. Kawam and his wife separately in different rooms for nearly two hours.  Moreover, the Agents "verbally intimidate[d]" Dr. Kawam by informing him that he faced imprisonment and asking him several unrelated questions about his Syrian descent.

After searching the home, the DEA Agents accompanied Dr. Kawam to his office where they found and seized more patient files.  Subsequently, the DEA Agents presented to Dr. Kawam for his signature a DEA-104 Voluntary Surrender of Controlled Substances Privileges and a Consent Order of Temporary Suspension of N.J. CDS Registration.  In his complaint, Dr. Kawam contends that the Agents coerced him into the signing those forms, while Defendants argue that the signing was consensual.

Shortly after the DEA raid, Dr. Kawam requested an administrative hearing to lift or modify the temporary suspension of his registration to prescribe controlled substances.  While the Administrative Law Judge ("ALJ") initially granted Dr. Kawam's request, he later dismissed Dr. Kawam's action on the ground that Dr. Kawam voluntarily relinquished his prescription rights by signing the DEA-104 form.  Because he signed the DEA-104 form, the ALJ reasoned, the CSA did not entitle Dr. Kawam to a hearing.

Approximately two months after the DEA raid, Dr. Kawam filed the instant action.  His complaint asserts the following four counts: (1) Judicial Review of Agency Decision; (2) Illegal Search and Seizure; (3) Dispute of Civil Asset Forfeiture; and (4) Replevin of Documents and Files.  Dr. Kawam voluntarily dismissed Count Three after the DEA agreed to return the currency seized from his home.   Defendants now move to dismiss the remaining three counts.

## II.   MOTION TO DISMISS

Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim.  Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  There are two types of challenges to subject-matter jurisdiction: (1) facial attacks, which challenge the allegations of the complaint on their face; and (2) factual attacks, which challenge the existence of subject-matter jurisdiction, quite apart from any pleadings. *Mortensen v. First*

---

[1] The Court will refer to DEA Agents Popowich and Germano collectively as "the DEA Agents" or "the Agents."

*Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In reviewing a facial attack, like the one in this case, the court must consider the allegations of the complaint in the light most favorable to the plaintiff.  *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993).  In reviewing a factual attack, the court may consider evidence outside the pleadings, and no presumptive truthfulness attaches to the plaintiff's allegations.  *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face."  *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility."  *Id.*

### A.  *Count One: Judicial Review of Agency Decision*

Count One is against the United States and asserts that the ALJ was arbitrary and capricious when he denied Dr. Kawam's request for a hearing and dismissed the administrative proceeding.  Essentially, Dr. Kawam is asking this Court to review a DEA determination made under the CSA.  However, Congress has provided that "[a]ll determinations, findings, and conclusions [made under the CSA]…shall be final and conclusive…except that any person aggrieved by a final decision…may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his place of business is located…" 21 U.S.C. § 877.  Dr. Kawam appears to agree that the ALJ's decision was a determination, finding, or conclusion falling within §877.  However, he argues that the permissive "may" contained in §877 means that he is permitted to file his claim here.  Notwithstanding Dr. Kawam's argument, courts have firmly held that the courts of appeals have exclusive jurisdiction over challenges to final determinations made by the DEA under the CSA.  *See, e.g., John Doe, Inc. v. Drug*

3

*Enforcement Admin.*, 484 F.3d 561, 565 (D.C.Cir. 2007) (citing 21 U.S.C. §877)). Consequently, this Court lacks jurisdiction to hear Dr. Kawam's challenge to the DEA's determination. Count One is therefore **DISMISSED WITH PREJUDICE**.

*B. Count Two: Illegal Search and Seizure*

Count Two asserts that Defendants conducted an illegal search of Dr. Kawam's home. Specifically, Dr. Kawam alleges that the Agents' actions "were clear and egregious violations of the Fourth Amendment and 42 U.S.C. §1983."

i. <u>Section 1983 Claims</u>

Generally, Section 1983 claims cannot be brought against a federal official. *Ruiz v. Federal Bureau of Prisons*, 481 Fed.Appx. 738, 739 n. 1 (3d Cir. 2012). An exception to this rule is where the federal official is conspiring with state officials acting under the color of state law. *See Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990). However, the plaintiff alleging such a conspiracy may not rely on threadbare recitals or conclusory assertions. *Jean-Louis v. Clifford*, No. 06-3972, 2008 WL 3479806, at *11 (D.N.J. Aug. 11, 2008). Dr. Kawam's complaint lacks allegations sufficient to establish that any of the DEA Agents conspired with state officials acting under the color of state law. Therefore, the Section 1983 claims against the DEA Agents are **DISMISSED WITHOUT PREJUDICE**. To the extent Dr. Kawam also alleges Section 1983 claims against the United States, it is well understood that the United States and its agencies are not proper parties to Section 1983 actions. *See Lomax v. U.S. Senate Armed Forces Service Committee*, 454 Fed.Appx. 93, 95 (3d Cir. 2011). Therefore, if Dr. Kawam has asserted a Section 1983 claim against the United States, it is **DISMISSED WITH PREJUDICE**.

ii. *Bivens* <u>Claims</u>

It is possible for a plaintiff to sue a federal official for constitutional violations under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because Dr. Kawam accuses federal officials of violating his Fourth Amendment rights, the Court will construe Count Two as a *Bivens* claim. *See Lawson v. McNamara*, 438 Fed.Appx. 113, 115 n.1 (3d Cir. 2011).[2] However, officials named in *Bivens* actions are still entitled to qualified immunity. *See, e.g., George v. Rehiel*, 738 F.3d 562, 571-72 (3d Cir. 2013). "To resolve a claim of qualified immunity, a court must engage in a two-pronged analysis to decide (1) whether the plaintiff alleged sufficient facts to establish the violation of a constitutional right, and (2) whether the right was clearly 'clearly established' at the time of the defendant's actions." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F/3d 850, 858 (3d Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232

---

[2] Defendants' motion to dismiss also includes a thorough discussion of why they believe Dr. Kawam's *Bivens* claims must fail.

(2009)). Dr. Kawam's *Bivens* claim alleges that the DEA Agents: (1) conducted an illegal search of his home; (2) illegally seized patient files from his home; and (3) effected an illegal seizure when they questioned him in his kitchen. The Court will address these arguments in turn.

Dr. Kawam's illegal search claim derives from the Fourth Amendment. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quotations and citations omitted). There are limited exceptions to this principle, such as where there are exigent circumstances or where a person voluntarily consents to a search and is authorized to do so. *See, e.g., Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006). Defendants argue that Dr. Kawam has not plead a constitutional violation because the complaint shows that he consented to the search of his home. The Court disagrees.

To determine whether consent to a search is voluntary, a court will consider the totality of the circumstances, including but not limited to "the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment." *U.S. v. Price*, 558 F.3d 270, 278 (3d Cir. 2009) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1972)). "[C]onsent is ineffective if it follows an express or implied claim by the police that they can immediately proceed to make the search in any event." *Orhorhaghe v. I.N.S.*, 38 F.3d 488, 501 (9th Cir. 1994) (citing *Bumper v. North Carolina*, 391 U.S. 543 (1968)).

Here, the complaint adequately pleads that Dr. Kawam did not voluntarily consent to the search of his home. Significantly, Dr. Kawam alleges that the DEA Agents misleadingly informed him that they had a warrant, but did not specify that the warrant was only for his office. Therefore, Dr. Kawam alleges, "Defendants' gross and material misrepresentation of their search warrant authority, coupled with their overwhelming show of force, effectively…caused him to believe that he had no choice but to acquiesce…" While the Defendants' vague representations concerning their warrant authority were technically accurate, those statements cannot be considered in isolation. *See Turk v. Comerford*, 488 Fed.Appx. 933, 945 n.17 (6th Cir. 2012). Rather, they must be viewed in conjunction with the allegations that ten law enforcement officials arrived at Dr. Kawam's residence early in the morning, blocked entry to his street, entered his home while armed and shouting, discussed imprisonment, and questioned him and his wife separately for nearly two hours. Thus, viewing the allegations in a light most favorable to Dr. Kawam, one can reasonably infer that the Agents, through their aggressiveness and vague representations concerning their warrant authority, sought to implicitly claim a right to search Dr. Kawam's home regardless of whether he consented. *See Orhorhaghe*, 38 F.3d at 501. Otherwise, it would be difficult to fathom why the Agents referred to a warrant for Dr. Kawam's office when they were seeking entry into his home.

Moreover, the Court finds that the complaint sufficiently alleges that the Agents violated Dr. Kawam's clearly established rights. A right is clearly established where its contours are sufficiently clear "that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2084 (2011) (internal quotations omitted). The ultimate question is whether the defendant had "'fair warning' that his conduct deprived his victim of a constitutional right." *Schneyder v. Smith*, 653 F.3d 313, 329 (3d Cir. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). It is clearly established that the tactics described in the foregoing paragraph violate the Fourth Amendment. *Williams v. Cnty of Santa Barbara*, 272 F.Supp.2d 995, 1018-19 (C.D.Cal. 2003) (officer not entitled to qualified immunity where consent to search was given only after the officer told the subject he had authority to search regardless of whether subject consented). Therefore, Dr. Kawam has stated a *Bivens* claim arising out of the search of his home.[3] However, Dr. Kawam has conceded that Special Agent DiMiceli did not participate in the raid. Therefore, any *Bivens* claims against her are **DISMISSED WITH PREJUDICE**.[4] Moreover, to the extent Dr. Kawam asserts any *Bivens* claims against the United States, those claims are **DISMISSED WITH PREJUDICE**. *See, e.g., Correctional Services Corp. v. Malesko,* 534 U.S. 61, 72 (2001).

Because Dr. Kawam has adequately plead that the search of his home was illegal, he also has stated a claim arising out of the seizure of patient files from his residence. Defendants argue that the seizure of the patient files from Dr. Kawam's home was lawful under the "plain view doctrine." The plain view doctrine applies only where the officer is lawfully in the place from which the evidence could be plainly viewed. *Horton v. California*, 496 U.S. 128, 137 (1990). As explained above, Dr. Kawam has sufficiently alleged that the DEA Agents unlawfully entered his home, which means that the plain view doctrine does not apply. *See, e.g., U.S. v. Jenkins*, 124 F.3d 768, 774 (6th Cir. 1997). Therefore, Dr. Kawam may proceed with this component of his *Bivens* claim.

Finally, the Court must determine whether the complaint states a *Bivens* claim arising out of the DEA Agents' questioning of Dr. Kawam. "'[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances

---

[3] On the day of the raid, Dr. Kawam signed a DEA Form-88, which states that he consented to the search of his home. Defendants allege that Dr. Kawam signed the form before the Agents searched his residence, whereas Dr. Kawam contends that he was not presented with the form until *after* the raid on his home and office was complete. *See United States v. Hotal*, 143 F.3d 1223, 1228 (9th Cir. 1998). Consequently, Defendants concede that Dr. Kawam is entitled to discovery on when he signed the DEA Form-88.

[4] Dr. Kawam asserts that dismissing the claims against Agent DiMiceli would be "premature" at this stage, notwithstanding his concession that Agent DiMiceli was not present when the DEA conducted its raid. However, Dr. Kawam merely alleges that Agent DiMiceli obtained a warrant to search Dr. Kawam's office. Not a single cause of action arises out of the procurement of the search warrant, which means that dismissal of the claims against Agent DiMiceli is appropriate.

surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Oliva-Ramos v. Attorney General of United States*, 694 F.3d 259, 283-84 (3d Cir. 2012) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Mendenhall*, 446 U.S. at 554 (citing *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)).

The complaint also states a Bivens claim arising out of the DEA Agents' questioning of Dr. Kawam. According to the complaint, several "gun wielding" officers – including the DEA Agents – surrounded Dr. Kawam in his kitchen while they questioned him. The DEA Agents also blocked Dr. Kawam's driveway with their vehicles, contributing to his reasonable belief that he was not free to leave. Moreover, the DEA Agents kept Dr. Kawam from his family members, including his wife, who was separately questioned in a different room. During this time, the DEA Agents also authoritatively shouted orders at Dr. Kawam, asked questions about his Syrian descent, and forebodingly suggested that he faced imprisonment. These allegations involve almost all of the examples articulated in *Mendenhall*, which means that the complaint sufficiently pleads the violation of a clearly established right. At the very least, a finding of qualified immunity at this early stage would be premature in light of the limited record before this Court. *See, e.g., Larsen v. Senate Com. of Pa.*, 154 F.3d 82, 94 (3d Cir. 1998). Therefore, Dr. Kawam may proceed with his *Bivens* claims against the DEA Agents, with the caveat that the Agents may renew their qualified immunity defense at summary judgment after discovery takes place.

In sum, Defendants' motion to dismiss on Dr. Kawam's *Bivens* claims is granted in part and denied in part. The motion is granted with respect to any *Bivens* claims against the United States and Agent DiMiceli. In all other respects, Dr. Kawam may proceed with his *Bivens* claim.

*C. Count Four: Replevin*

Dr. Kawam has asserted a replevin claim and Fifth Amendment claim against both the United States and the DEA Agents.

      iii.    Replevin Claims

The replevin claim arises out of the DEA's seizure of Dr. Kawam's patient files. Replevin actions against the United States are governed by the Federal Tort Claims Act ("FTCA"). *See Verma v. U.S.*, 19 F.3d 646, 647 (D.C.Cir. 1994). The FTCA operates as a limited waiver of sovereign immunity. *See e.g.*, *White-Squire v. U.S. Postal Service*, 592 F.3d 453, 456 (3d Cir. 2010). If certain requirements are met, it allows common law tort actions against the United States. *Dalehite v. United States*, 346 U.S. 15, 28 (1953). One

requirement is that the plaintiff file an administrative claim with the relevant agency and exhaust his or her administrative remedies before filing suit. See 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding "FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"). Therefore, "[n]o claim can be brought under the FTCA unless the plaintiff first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim." *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015). *See also Deutsch V. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995) ("[A] claimant must have first presented the claim, in writing and within two years after its accrual, to the appropriate federal agency, and the claim must have been denied.").

The parties dispute whether Dr. Kawam properly presented an administrative claim before he filed this lawsuit. What is undisputed, however, is that the DEA did not render a final decision on Dr. Kawam's administrative claim before he initiated this action. An FTCA claim must be dismissed if it is filed before the appropriate agency renders a final decision on an administrative claim.[5] 28 U.S.C. §2675; *McNeil v. United States*, 508 U.S. 106, 111-12 (1993). Moreover, Dr. Kawam cannot cure this defect by filing an amended complaint. Rather, he must file a new FTCA suit in the event that the DEA renders a final decision of denial. *See, e.g., Hoffenberg v. Provost*, 154 Fed.Appx. 307, 310 (3d Cir. 2005) (FTCA exhaustion requirement cannot be fulfilled through amendment because "amended complaint cannot serve as the date the federal suit was instituted.'" (citing *McNeil* 508 U.S. at 111-12)); *Duplan v. Harper*, 188 F.3d 1195, 1999 (10th Cir. 1999) ("a 'premature complaint cannot be cured through amendment, but instead, plaintiff must file new suit" (citing *Sparrow v. USPS*, 825 F.Supp. 252, 245-55 (E.D.Cal. 1993))). Therefore, Dr. Kawam's FTCA claim against the United States is **DISMISSED AS PREMATURE**. If Dr. Kawam wishes to re-file this claim, he must do so through a new action.

Dr. Kawam has also asserted replevin claims against the DEA Agents. Defendants contend that pursuant to the Westfall Act, Dr. Kawam must bring those claims against the United States under the FTCA. Because Dr. Kawam's FTCA claim against the United States must fail, Defendants argue, so too must the claims against the Agents. The Westfall Act provides that "suit against the United States under the FTCA [is] the exclusive remedy for negligent or wrongful acts by federal employees committed within the scope of employment." *Lomando v. United States*, 667 F.3d 363, 375 (3d Cir. 2011) (citing Pub.L. No. 100-694, 102 Stat. 4563). The United States Attorney's Office is authorized to certify that a federal employee was acting within the scope of employment (a "scope certification") at the time of an incident through which a claim arose and request that the United States be substituted as a defendant. *Melo v. Hafer*, 912 F.2d 628, 639-40 & n. 14 (3d Cir. 1990) (quoting 28 U.S.C. §2679(d)(1)).

---

[5] If an agency fails to take any action within six months of receiving a claim, the claim will be deemed to have received a final denial under the FTCA. 28 U.S.C. §2675.

8

Here, the United States Attorney's Office has not certified that the DEA Agents were acting within the scope of their employment when they searched Dr. Kawam's home and office. Therefore, the Court will deny Defendants' motion to dismiss Dr. Kawam's replevin claim against Agents Germano and Popwich. However, because Agent DiMiceli was not present for the raid, the replevin claim against her is **DISMISSED WITH PREJUDICE**. The United States Attorney's Office, if it so chooses, may file a scope certification for Agents Germano and Popowich within 21 days of entry of this opinion and order. *See Reynolds v. Federal Bureau of Prisons*, No. 09-3096 2010 WL 744127, *9 (E.D.Pa. March 2, 2010). If the United States Attorney's Office files a scope certification, the Court may take up this component of Defendants' motion to dismiss at a later date.[6]

### iv. Fifth Amendment Claim

In a single line falling under his replevin claim, Dr. Kawam claims that Defendants' seizure of his patient files "amounts to an illegal taking of property in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution." However, when the government seizes evidence under its investigatory police powers, it is not effecting a taking for "public use" and is therefore not subject to a Takings Clause challenge. *AmeriSource Corp. v. U.S.*, 525 F.3d 1149, 1153 (Fed Cir.2008) (citing *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1329 (Fed.Cir.2006)). Even if the government's seizure is alleged to be unlawful, a civil equitable action, as opposed to a Takings Claim, is a more appropriate vehicle for demanding the return of property. *AmeriSource Corp.*, 458 F.3d at 115 (citing *Warden v. Hayden*, 387 U.S. 294, 309-10 (1967)). *See also Johnson v. United States*, 971 F.Supp. 862, 866 (D.N.J. 1997) (Fed.R.Crim. 41(g) motion can be treated as a civil equitable proceeding for the return of seized property even when there are no criminal proceedings pending against the movant.) Therefore, to the extent Dr. Kawam asserts a Takings Clause claim, it is **DISMISSED WITH PREJUDICE**.

## III.  MOTION FOR SUMMARY JUDGMENT

In the alternative, the DEA Agents argue that summary judgment should be entered in their favor on Dr. Kawam's *Bivens* claims. They contend that the declarations they submitted in connection with their motion definitively prove that their actions on the day of the raid were lawful. Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir.

---

[6] In the event that the Defendants move to substitute the United States for the DEA Agents, Dr. Kawam would be afforded an opportunity to rebut certification. *Schrob v. Catterson*, 967 F.2d 929, 935 (3d Cir. 1992).

1990). On this limited, pre-discovery record, it is apparent that there are factual disputes regarding what occurred on August 13, 2014. Because entering summary judgment at this stage would be premature, Defendants' motion is denied. *See, e.g., ECC Sys. v. N.J Regional Council of Carpenters*, No. 11-1437, *1 (D.N.J. Jan. 31, 2012).

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**, and Defendant' motion for summary judgment is **DENIED**. An appropriate order accompanies this decision.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 9th, 2015**